

1  STEVEN M. TINDALL (SBN 187862)
   RUKIN HYLAND DORIA & TINDALL LLP
2  100 Pine Street, Suite 725
   San Francisco, CA  94111
3  Telephone: (415) 421-1800
   Facsimile: (415) 421-1700
4  steventindall@rhdtlaw.com

5  Attorneys for Plaintiff and the Plaintiff Class
   (Other counsel listed on signature page)

6

7              IN THE UNITED STATES DISTRICT COURT
8            FOR THE NORTHERN DISTRICT OF CALIFORNIA
                      SAN JOSE DIVISION

9

10                                    CV 08      2142

11  VERONICA LATREASE JORDAN,         CASE NO.
    individually, and on behalf of all others
12  similarly situated,               COMPLAINT FOR DAMAGES AND
                                      INJUNCTIVE RELIEF
13              Plaintiff,
                                      JURY TRIAL DEMANDED
14  v.
                                      CLASS ACTION
15  WASHINGTON MUTUAL BANK, FA,

16              Defendant.

17

18                  **CLASS ACTION COMPLAINT**

19       Plaintiff, VERONICA LATREASE JORDAN, individually and on behalf of all others

20  similarly situated, alleges as follows:

21

22  **I.     INTRODUCTION**

23  1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1601, *et seq.*,

24  California's Business and Professions Code, §§ 17200, 17500, *et seq.*, and other statutory and common

25  law in effect.  Plaintiff, VERONICA LATREASE JORDAN, individually and on behalf of all others

26  similarly situated, brings this action against WASHINGTON MUTUAL BANK, FA ("Defendant"),

27  based on Defendant's failure to clearly and conspicuously disclose to Plaintiff and the Class

28

─────────────────────────────────────────
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Members, in Defendant's Option Adjustable Rate Mortgage ("Option ARM") loan documents and in the required disclosure statements accompanying the loans, (i) the actual interest rate on which the payment amounts listed in the Truth in Lending Disclosure Statements are based (12 C.F.R. § 226.17); (ii) that, in contradiction to the terms set forth in the Plaintiff and Class Members Notes, following the payment schedule as disclosed by the Defendant in the Truth in Lending Disclosure Statement will not pay both principal and interest and will result in negative amortization and the loss of equity in the borrower's home (12 C.F.R. § 226.19); and (iii) complete information regarding the various monthly payment choices the borrower would have and how the different options would affect the amount the borrower would pay over the life of the loan and the loss of equity in the borrower's home.

## II.        **THE PARTIES**

2.      On or about April 25, 2005, Plaintiff, VERONICA LATREASE JORDAN, entered into an Option ARM loan agreement with Defendant in San Jose, California. The Option ARM loan was secured by Plaintiff's primary residence. Attached hereto as Exhibit 1 is a true and correct copy of her Note and Truth in Lending Disclosure Statement pertinent to this action.

3.      Plaintiff is informed and believes that Defendant WASHINGTON MUTUAL BANK, FA, is a federally-chartered savings and lending institution with headquarters located in Chatsworth, California.

4.      At all relevant times hereto, Defendant was and is engaged in the business of promoting, marketing, distributing, and selling the Option ARM loans that are the subject of this Complaint. Defendant transacts business in the United States and at all relevant times promoted, marketed, distributed, and sold Option ARM loans throughout the United States. Defendant has significant contacts throughout the United States and the activities complained of herein occurred, in whole or in part, in the State of California and the United States.

5.      Plaintiff is informed and believes that Defendant is responsible in some manner--either by act

-2-

1    or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior,

2    breach of contract, or otherwise--for the occurrences alleged herein, and that Plaintiff's injuries, as

3    alleged herein, were proximately caused by the conduct of Defendant.

**III.    JURISDICTION AND VENUE**

6.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1601 *et seq.,* and 28 U.S.C. §1331.

7.    This Court has personal jurisdiction over the parties in this action in that the Defendant regularly transacts business or is a corporation duly licensed to do business in California.

8.    Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims occurred in this District, and because there is personal jurisdiction in this District over the Defendant because it regularly conducts business in this judicial district.

**IV.    FACTS COMMON TO ALL CAUSES OF ACTION**

9.    Defendant is among the largest financial institutions in the United States.

10.    This action is based on the Defendant's marketing and sale of Option ARMs. Option ARM loans have been called "the riskiest and most complicated home loan product ever created" and have been termed a "neutron bomb" that will "kill all the people but leave the houses standing" by an economist at the Ford Foundation.

11.    An Option ARM mortgage is a monthly adjustable rate mortgage that gives the borrower multiple monthly payment options. When the borrower receives his or her monthly statement, it provides options to pay a minimum payment amount, an interest-only payment, a payment based on a 30-year amortization, or a 15-year amortization.

12.    Option ARMs were developed in the early 1980s as a cash flow tool for wealthy home buyers who wanted the option to pay low payments for a period and pay off large portions of their mortgage

-3-

1    all at once.

2    13.    However, in the later years of the recent housing boom, lenders began selling Option ARMs to

3    ordinary borrowers as a means to purchase larger and more expensive houses, without disclosing to

4
     them the risks of doing so.
5

6    14.    Up to 80 percent of all Option ARM borrowers make only the minimum payment each month,

7    often because they are not properly informed about the terms of the loan. The minimum payment

8    option is insufficient to pay the interest that accrues on the principal balance. The unpaid interest is then

9    added to the balance of the mortgage, a process called "negative amortization." Once the balance

10   reaches a set amount, usually 125 percent of the original loan principal, the loan is automatically

11
     reset to a higher rate.
12

13   15.    Option ARM loans usually include hefty pre-payment penalties as well, trapping borrowers

14   in unfavorable loans that they cannot refinance.

15   16.    When marketing Option ARM mortgages, lenders routinely touted the minimum payment

16   and downplayed or failed to disclose the resulting negative amortization.  Lenders pushed

17   Option ARM loans because they are very profitable, at least on paper.  Under generally

18   accepted accounting principles ("GAAP") the entire interest payment due can be booked as

19   income even when only the minimum amount was paid by the borrower. This accounting

20   practice enables lenders to use Option ARM loans as a means to generate phantom profits,

21   thereby boosting their stock price.
22

23   17.    Defendant is among the largest financial institutions and financial holding companies in

24   the United States and among the largest underwriters of Option ARM loans in the United States.

25   18.    This action arises out of residential mortgage loan transactions in which Defendant failed to

26   disclose in writing pertinent and material information in a clear and conspicuous manner to Plaintiff

27   and the Class Members as required by law.
28

-4-

19.    This action also concerns Defendant's unlawful, fraudulent, and unfair business acts or practices. Defendant engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendant's profits, even as Defendant knew its conduct could cause long-term difficulties for consumers and could result in the loss of their homes through foreclosure.

20.    Plaintiff, along with thousands of other similarly situated consumers, was sold an Option ARM home loan by Defendant. The Option Arm loan sold to Plaintiff is a deceptively devised financial product. The loan has a variable rate feature with payment caps. The product was sold based upon a low payment option, when in fact Plaintiff was charged a different, much greater interest rate than the rate upon which the payment amounts listed in the Truth in Lending Disclosure Statement were based.

21.    Defendant failed to disclose, and by omission, failed to inform Plaintiff of the fact that Defendant's Option ARM loan was designed to, and did, cause negative amortization to occur. Further, once lured into these loans, consumers cannot easily extricate themselves from the loans because Defendant included in the loans a stiff and onerous prepayment penalty.

22.    The Option ARM loan Defendant sold to Plaintiff violates the Truth in Lending Act ("TILA"). The TILA is designed to protect consumers; it mandates that certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans. Defendant failed to make these disclosures in connection with the Option ARM loans sold to Plaintiff and others similarly situated.

23.    At all times relevant, Defendant sold its Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner. Defendant sold to the general public a loan which would provide a very low payment rate for a fixed period of time and made no reference in the Note and Truth in Lending Disclosure Statement that if consumers followed Defendant's schedule of payments

1    that negative amortization was certain to occur.

2    24.    Plaintiff and others similarly situated were consumers who applied for a mortgage loan

3    through Defendant. During the loan application process, in each case, Defendant represented to

4    Plaintiff and the Class Members that in accepting these loan terms, Plaintiff would be able to lower

5    their mortgage payment and save money. Defendant initiated this scheme in order to maximize the

6

7    amount of the loans issued to consumers thereby maximizing Defendant's profits.

8    25.    As a direct and proximate result of Defendant's representations and fraudulent omissions,

9    and the conduct alleged herein, Plaintiff agreed to finance her primary residence through Defendant's

10    Option ARM loan.  The loan sold to Plaintiff and the Class had a low payment, which Plaintiff

11    reasonably believed would be sufficient to pay both the principal and interest of the loan.

12    However, the true facts are that the payment schedule provided to Plaintiff by Defendant was not

13    based on the interest rate disclosed in the Note and the Truth in Lending Disclosure Statement, but

14

15    instead, was based on a much lower rate or was based on a payment that was insufficient to cover the

16    interest charged on the loan, much less the principal. Therefore, the payment schedule provided by

17    Defendant was *guaranteed* to be insufficient to pay all of the interest due, let alone both principal

18    and interest, which was certain to result in negative amortization.

19    26.    Plaintiff believed these facts to be true because that is what Defendant intended consumers to

20    believe.  Defendant aggressively sold its Option ARM product as a fixed, low payment home loan.

21    Defendant knew that if it sold these loans in such a manner, its Option ARM loan product would

22

23    be a hugely popular and profitable product for them.  Defendant also knew, however, that it was

24    selling its product in a false and deceptive manner.  While Defendant trumpeted its low, fixed

25    payment loans to the public, Defendant knew its promise of a low, fixed payment and interest rate

26    was illusory.

27    27.    Prior to closing the Plaintiff's loan, Defendant failed to provide Plaintiff

28

-6-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    with any disclosures regarding the nature of the Option ARM, the risk of "negative amortization,"

2    and the fact that the minimum payment did not represent the full cost of the loan.

3        28.     In fact, Defendant's Option ARM loan possessed a low, fixed *payment* that was wholly

4    unrelated to the interest rate listed in the Note and Truth in Lending Disclosure Statement.

5    Unbeknownst to Plaintiff and the Class Members, the actual interest rate they were charged on

6    their loans was not used to determine the payment amount listed by Defendant in the Note and the

7    Truth in Lending Disclosure Statement.  Defendant, in every instance and for every loan, listed a

8    payment amount that was not in any way related to the interest rate disclosed in the Note and Truth in

9    Lending Disclosure Statement and was insufficient to pay both the principal and interest, as

10   indicated in the Note.

11       29.     The interest charges incurred by Plaintiff over and above the fixed payment were added

12   to the principal balance on her home loan in ever-increasing increments, substantially increasing

13   the principal balance on her home loan and reducing the equity in her home.

14       30.     At the time of closing the loan, Plaintiff and Class Members were given disclosures that

15   stated, "YOUR LOAN CONTAINS A VARIABLE-RATE FEATURE. DISCLOSURES

16   ABOUT THE VARIABLE-RATE FEATURE HAVE BEEN PROVIDED TO YOU EARLIER."

17   In fact, no previous disclosures, or at best, insufficient and incomplete disclosures were provided to

18   Plaintiff and Class Members.

19       31.     At all times relevant, Defendant knew that the payments listed in the Truth in Lending

20   Disclosure Statement during the initial 5 years of the Note was not related to the interest rate listed

21   in the Note and the Truth in Lending Disclosure Statement but instead, was based on a much lower

22   rate and was not disclosed in either the Note or the Truth in Lending Disclosure Statement as

23   required by law.

24       32.     Knowing the truth, and motivated by profit and market share, Defendant failed to disclose, and

-7-

by omission, failed to inform Plaintiff and the Class Members that the payment schedule provided by Defendant was not based on the listed interest rate but instead, was based upon an undisclosed, much lower, interest rate.

33.    Defendant, through the standardized loan contracts it created and supplied to Plaintiff, stated that negative amortization was only a mere possibility and would occur only if the payments were not sufficient. Defendant failed to disclose and omitted the objectively-material fact that negative amortization was certain to occur if consumers followed the payment schedule listed by Defendant in the Truth in Lending Disclosure Statement. Defendant uniformly failed to inform Plaintiff and the Class Members that when the principal balance increased to a certain level, they could no longer select the minimum payment option. All of this information was objectively-material and necessary for consumers to make an informed decision because this information would have revealed that the loan's principal balance would increase if the payment schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest and payment rates reset.

In this respect, Defendant utterly failed to place any warning in the Truth in Lending Disclosure Statement that negative amortization was certain to occur.

34.    At all times relevant, once Plaintiff and Class Members accepted Defendant's Option ARM loan contract, they had no viable option by which to extricate themselves because these Option ARM loan agreements included a draconian prepayment penalty for a fixed period of time.

35.    The Option ARM loans sold by Defendant all have the following uniform characteristics:

    (a)  The loan has a low fixed payment amount for the first 5 years of the Note, as evidenced in the payment schedule provided by Defendant;

    (b)  The payment amount is wholly unrelated to the interest rate listed on the Note and

-8-

Truth in Lending Disclosure Statement;

(c)   The Note states that each payment will pay both principal and interest;

(d)   The payment amounts listed in the Truth in Lending Disclosure Statement are not sufficient to pay the actual interest being charged, and none of the payments up through the first 5 years of the Note are applied to the principal balance;

(e)   The low payment amount listed in the Note and Truth in Lending Disclosure Statement was intended by Defendant to mislead consumers into believing that the low payments for the first 5 years of the loan were based on the low listed interest rate;

(f)   The chief marketing gimmick, minimum payment, was intended to misleadingly portray to consumers that the low payments would continue for years with no negative amortization;

(g)   The payment has a capped annual increase on the payment amount;

(h)   If the unpaid balance on the loan exceeds a certain percentage of the original principal borrowed (usually 125 percent), the payment automatically resets at a higher interest rate and/or payment amount; and

(i) The loan includes a prepayment penalty for fixed period, thereby preventing consumers from refinancing during that time.

36.   At all times relevant, Defendant knew--and failed to disclose and by omission failed to inform Plaintiff and the Class Members in a clear and conspicuous manner--that the payment amounts set forth in Defendant's schedule of payments were insufficient to cover the actual interest charged on the loans.

37.   At all times relevant, Defendant knew--and failed to disclose and by omission failed to inform Plaintiff and the Class Members--that the payment amounts set forth in Defendant's schedule of payments were insufficient to pay both the principal and interest and that this was, in fact, a

1    negatively amortizing loan that was certain to, and did, cause Plaintiff and the Class Members to

2    lose the equity in their homes.

3    38.    Disclosing whether a payment will result in negative amortization is of critical importance to

4    consumers. If the disclosed payment rate is insufficient to pay both principal and interest, one of

5    the consequences of negative amortization is loss of equity. Defendant is and at all times relevant

6    hereto has been aware that clear and conspicuous disclosure of the actual interest rate and payment

7    rate that is sufficient to avoid negative amortization, and the concomitant loss of equity, is extremely

8    
9    important, material information.

10    39.    At all times relevant, Defendant knew or should have known, or was reckless in not

11    knowing that: (i) the payment amount provided to Plaintiff was insufficient to pay both interest

12    and principal; (ii) that negative amortization was substantially certain to occur if Plaintiff made

13    payments according to the payment schedule provided by Defendant; and (iii) that loss of equity

14    and/or loss of Plaintiff's residence was substantially certain to occur if Plaintiff made payments

15    
16    according to the payment schedule provided by Defendant.

17    40.    In spite of its knowledge, Defendant sold its Option ARM loan as a product that would

18    provide Plaintiff and the Class Members with a low payment for up to five (5) years, and at all times

19    relevant, failed to disclose and/or concealed, by making partial representations of material facts when

20    Defendant had exclusive knowledge of the material fact that negative amortization was certain to

21    
22    occur. This concealed and omitted information was not known to Plaintiff and the Class Members.

23    At all times relevant, Defendant failed to disclose and/or actively concealed this information by

24    making such statements and partial misleading representations to Plaintiff and all others similarly

25    situated. Because the Option ARM loan did not provide a payment amount based on the actual

26    interest rate charged on the Note, the payment rate disclosed by Defendant was insufficient to pay

27    both principal and interest, and negative amortization was certain to, and did, occur.

28

41. The true facts about the Option ARM loan are that they do not provide Plaintiff and the Class Members with a low interest rate loan with payment amounts sufficient to pay both principal and interest, and thus, are certain to result, and did result, in negative amortization.

42. To this day, Defendant continues to withhold and conceal material information from consumers, and the public, that: (i) the payment rate provided to Plaintiff and the Class Members is and was insufficient to pay both principal and interest; (ii) if the disclosed payment schedule is followed, Plaintiff and the Class Members have and/or are certain to suffer negative amortization; and (iii) loss of equity and/or possession of the property is certain to occur if the disclosed payment schedule is followed. Nevertheless, Defendant has failed and continues to fail to clearly and conspicuously disclose to Plaintiff the existence of this important, material information and the injury caused thereby, including but not limited to the loss of equity.

43. Defendant also failed to provide complete information regarding the various monthly payment options the borrower would have and how the different options would affect the amount the borrower would pay over the life of the loan and the loss of equity in the borrower's home.

44. The only payment option shown in the Truth in Lending Disclosure Statement is the minimum payment option. The minimum payment option results in the most risk to the consumer, and the most pecuniary benefit to the Defendant.

45. The purpose of the TILA is to provide information to consumers so that they are informed about the terms of their loans and the kind of credit they are buying so that they are able to compare it with the terms of other loans. Defendant's failure to set forth all options of the Option ARM loan does not even provide consumers with enough information to decide which payment option is the most beneficial for the very loan they purchased, much less permit them to compare the different options of the Option ARM loan with competing loans.

46. Disclosure of the other options available to Plaintiff would have allowed her to (1)

-11-

compare the effect of the payment cap and the minimum payment versus payments of interest only or principal and interest on negative amortization; (2) compare the total amount financed, which would vary greatly depending on the payment option chosen; and, (3) compare the amount of monthly payments under the various options.

47.     Disclosure of the payment options is crucial so that consumers can ascertain which payment option they should choose or decide if they can even afford the loan.

48.     Disclosure of the payment options is also necessary so that consumers can understand exactly how much they would be required to pay in order to fully pay the interest accrued and pay down their principal balance in the other payment options, as well as compare the payment options with competing loans so they can engage in the informed use of credit, which is the main purpose of the TILA.

49.     In the end, the harm caused by Defendant's omissions and failures to disclose grossly outweighs any benefit that could be attributed to them.

50.     Knowing the truth and motivated by profit and market share, Defendant has knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

51.     The Option ARM loans have resulted and will continue to result in significant loss and damage to the Plaintiff and Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

52.     The facts which Defendant misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the ARM loans in that Plaintiff and others similarly situated would have not purchased these loans but for Defendant's unlawful, unfair, fraudulent and/or deceptive acts and practices as alleged herein.

53.     Defendant has engaged and continues to engage in an unlawful, unfair, fraudulent, untrue

-12-

1    and/or deceptive scheme to induce consumers to pursue its ARM loans.

2    54.    Defendant's unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices

3    were committed with willful and wanton disregard for whether or not Plaintiff and others similarly

4    situated would, in fact, receive a home loan that would actually provide the low interest and

5    payment rate, as promised, for up to five years of the loan that is sufficient to pay both principal and

6    interest.

7

8    55.    Upon information and belief and at all times relevant, Defendant possessed full knowledge

9    and information concerning the above facts about the ARM loans, and otherwise sold these ARM

10   loans throughout the United States, including the State of California.

11

12   **V.    CLASS ACTION ALLEGATIONS**

13   56.    Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class")

14   pursuant to Rules 23(a) and 23(b) of the Federal Rule of Civil Procedure and the case law thereunder.

15   Plaintiff seeks to represent the following Classes:

16
17          **The California Class**: All individuals who received an Option ARM loan
            through Defendant on their primary residence located in the State of California.
18          Excluded from the California Class are Defendant's employees, officers, directors,
            agents, representative, and their family members; and

19          **The National Class**: All individuals in the United States of America who received
20          an Option ARM loan through Defendant secured by their primary residence
            located in the United States of America. Excluded from the National Class are
21          Defendant's employees, officers, directors, agents, representatives, and their family
            members.

22   Plaintiff reserves the right to amend or otherwise alter the Class definitions at the appropriate time

23   in response to facts learned through discovery, legal arguments advanced by Defendant or

24   otherwise.

25
26   57.    Numerosity: The Class is so numerous that the individual joinder of all members is

27   impracticable under the circumstances of this case. While the exact number of Class Members is

28   unknown at this time, Plaintiff is informed and believes that the entire Class includes tens of

-13-

1    thousands of members.

2    58.    Commonality:  Common questions of law or fact are shared by the Class Members. This action

3    is suitable for class treatment because these common questions of fact and law predominate over any

4    individual issues.  Such common questions include, but are not limited to, the following:

5
6       a)    Whether Defendant's acts and practices violate the Truth in Lending Act;

7       b)    Whether Defendant's conduct violated 12 C.F.R. § 226.17;

8       c)    Whether Defendant's conduct violated 12 C.F.R. § 226.19;

9       d)    Whether Defendant had a duty to disclose to Plaintiff and the Class important

10            material information concerning their loans, including but not limited to (i) the fact

11            that the payment amounts listed in the Truth in Lending Disclosure Statement were

12            insufficient to pay both principal and interest; (ii) the fact that the payment

13            schedule was not based on the listed interest rate; and (iii) the fact that negative

14            amortization would occur if Plaintiff and the Class made the payments according to

15            the schedule of payment Defendant listed in the Truth in Lending Disclosure

16            Statement;

17
18       e)    Whether Defendant, by and through their officers, employees, and agents

19            concealed, omitted and/or otherwise failed to disclose information it was

20            mandated to disclose under TILA;

21
22       f)    Whether Defendant failed to disclose the true variable nature of interest rates on

23            adjustable rate mortgage loans and adjustable rate home equity loans;

24
25       g)    Whether Defendant failed to properly disclose the processes by which negative

26            amortization occurs, ultimately resulting in the recasting of the payment structure

27            over the remaining lifetime of the loans;

28       h)    Whether Defendant's marketing plan and scheme misleadingly portrayed or implied

-14-

that the interest rate or payment rate on Option ARM loans was fixed;

i)    Whether Defendant failed to disclose, and by omission, failed to inform Plaintiff and the class that the payment schedule was not based on the interest rate disclosed in the Note and Truth in Lending Disclosure Statement;

j)    Whether Defendant failed to disclose, and by omission, failed to inform Plaintiff and the Class that the payment amounts listed in the Note and Truth in Lending Disclosure Statement are insufficient to cover the principal and interest;

k)    Whether Defendant failed to disclose, and by omission, failed to inform Plaintiff and the Class that negative amortization was certain to occur if Plaintiff and the Class made the payments according to the payment schedule provided by Defendant;

l)    Whether Defendant had a duty to disclose to Plaintiff and the Class important material information regarding all of the payment options available under the Option ARM loan;

m)    Whether Defendant engaged in unfair business practices aimed at deceiving Plaintiff and the Class before and during the loan application process;

n)    Whether Defendant's failure to apply Plaintiff and the Class Members' payment to principal as promised in the Note constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

o)    Whether Defendant breached the covenant of good faith and fair dealing;

p)    Whether the terms and conditions of Defendant's Option ARM home loan are unconscionable, including but not limited to: (i) listing a payment amount and interest rate which bear no relation to each other; (ii) failing to state that negative

-15-

amortization was certain to occur if the payment schedule provided by Defendant was followed; and (iii) under the terms and conditions of these loans, the prepayment penalty provision;

q) Whether Plaintiff and the Class are entitled to declaratory relief, including but not limited to whether Defendant's Option ARM loans violate the TILA;

r) Whether Plaintiff and the Class are entitled to rescission under the TILA;

s) Whether Plaintiff and the Class are entitled to statutory damages under the TILA;

t) Whether Plaintiff and the Class are entitled to actual damages;

u) Whether Plaintiff and the Class are entitled to punitive damages; and

v) Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution and injunctive relief.

59.    Typicality:  Plaintiff's claims are typical of the claims of the Class Members.  Plaintiff and the Class Members were subjected to the same kind of unlawful conduct and the claims of Plaintiff and the Class Members are based on the same legal theories.

60.    Adequacy:  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends on prosecuting this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and their counsel.

61.    Ascertainable Class:  The proposed Class is ascertainable in that the members can be identified and located using information contained in Defendant's mortgage lending records.

62.    This case is brought and can be maintained as a class action under Rules 23(b)(1), 23(b)(2), and 23(b)(3):

a.    <u>Risk of Inconsistent Judgments:</u>  The unlawful acts and practices of Defendant, as alleged herein, constitute a course of conduct common to Plaintiff and each Class Member. Prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of individual Class Members to protect their interests;

b.    <u>Injunctive and/or Declaratory Relief to the Class is Appropriate:</u> Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

c.    <u>Predominant Questions of Law or Fact:</u>  Questions of law or fact common to the Class Members, including those identified above, predominate over questions affecting only individual Class Members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.  Further, an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudicating each such individual lawsuit would be substantial.

**VI.     FIRST CAUSE OF ACTION**

**Violations of Truth in Lending Laws, 15 U.S.C.A. §1601, *et seq*.**

63.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

64.    15 U.S.C.A. § 1601, *et seq*., is the Federal Truth in Lending Act ("TILA").  The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. § 226) and its Official Staff Commentary.  Compliance by lenders with Regulation Z became

-17-

1    mandatory on October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve

2    Board is also binding on all lenders.

3    65.      The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. §226.1, which

4    reads:

5
               **§226.1 Authority, purpose, coverage, organization, enforcement and**
6              **liability...**

7              (b)      Purpose. The purpose of this regulation is to promote the informed
                        use of consumer credit by requiring disclosures about its terms and costs.
8                       The regulation also gives consumers the right to cancel certain credit
                        transactions that involve a lien on a consumer's principal dwelling...
9

10   66.      Regulation Z also mandates very specific disclosure requirements regarding home loans with

11   which lenders, including Defendant, must comply:

12
               **§226.17. General disclosure requirements.**
13
               (a)      Form of Disclosures. (1) The creditor shall make the disclosures
14                      required by this subpart clearly and conspicuously in writing, in a form that
                        the consumer may keep. The disclosures shall be grouped together, shall be
15                      segregated from everything else, and shall not contain any information
                        not directly related to the disclosure required under §226.18.
16

17   67.      The purpose of the TILA is to assure a meaningful disclosure of credit terms so that

18   borrowers will be able to more readily compare the various credit terms available to them, avoid the

19   uninformed use of credit, and protect against inaccurate and unfair credit billing practices.

20   68.      Defendant's Option ARM loan violates the TILA because Defendant failed to comply with

21   the disclosure requirements mandated by Regulation Z and the Official Staff Commentary issued

22   by the Federal Reserve Board. Defendant failed in a number of ways to clearly, conspicuously

23   and/or accurately disclose the terms of the Option ARM loan to Plaintiff as Defendant was required

24   to do under the TILA. These violations are apparent on the face of the TILA Disclosure Forms.

25   69.      As such, Plaintiff seeks redress under the Truth in Lending Act. This action seeks to obtain

26   rescission for each Class Member, injunctive relief, redress, restitution, disgorgement, money

27
28   damages, attorneys' fees and other equitable relief against Defendant for engaging in unfair or

-18-

1    deceptive acts or practices in violation of the TILA.

2    70.    The TILA violations committed by Defendant are more specifically detailed as follows:

3    **A.    Defendant's Failure to Clearly and Conspicuously Disclose that the
4    Payment Schedules Are Not Based on the Actual Interest Rate Violates the
     TILA**

5    71.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning
6
     the interest rate and payments in a clear and conspicuous manner. Further, a misleading disclosure
7
8    is as much a violation of TILA as a failure to disclose at all.  As for Plaintiff's and Class Members'

9    Option ARM loans, Defendant violated 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 in that it failed to

10   clearly and conspicuously disclose the interest rate upon which the payments listed in the Truth in

11   Lending Disclosure Statement are based.

12   72.    The scheduled payment amounts and interest rate listed in the Note and Truth in Lending
13
     Disclosure Statement for each of the subject loans are unclear and inconspicuous.  In fact, the
14
15   payment amounts are not based on the interest rate listed, but instead, are based upon an interest
16
     rate which was neither disclosed nor made conspicuous as required under the TILA.

17   73.    At all times relevant, Defendant knowingly and intentionally included in each of the Notes

18   and Truth in Lending Disclosure Statements a payment schedule which was not based upon the

19   interest rate listed in these same documents.  Defendant's failure to clearly and conspicuously

20   disclose the interest rate upon which the payment amounts were based was, and is, deceptive.

21   74.    Further, in addition to Defendant's failure to disclose in the Note and the Truth in Lending
22
     Disclosure Statement that the payments listed were not based upon the interest rate listed,
23
24   Defendant knowingly and intentionally stated in each of the Notes that the payments would be

25   applied to both principal and interest.  However, in truth, if Plaintiff followed the payment schedule

26   provided by Defendant, the payments were guaranteed to be insufficient to pay the principal and

27   interest on the loan.

28
                                              -19-

75.     At all times relevant, Defendant failed to clearly and conspicuously disclose to Plaintiff that if she made payments according to the payment schedule set forth in the Truth in Lending Disclosure Statement that was provided by Defendant, that negative amortization was not just a mere possibility--it was a certainty.

76.     At all times relevant, Defendant purposefully and intentionally failed to disclose to Plaintiff the interest rate upon which the payment schedule was based in order to mislead and deceive Plaintiff into believing that she would be getting a loan with a low fixed payment rate that would be sufficient to pay both interest and principal.

77.     At all times relevant, the payment amount provided by Defendant was intended to and did deceive consumers into falsely believing they would, in fact, receive the low interest rate upon which the payment schedule is based. While the Note states the amount of Plaintiff's initial monthly payment, the initial monthly payment amounts stated in the Note and the Truth in Lending Disclosure Statement are not in any way related to the interest rate listed in the Note and the Truth in Lending Disclosure Statement.

78.     Defendant employed the aforementioned bait-and-switch tactics in a common and uniform class-wide basis. In particular, had Defendant clearly and conspicuously disclosed a payment amount sufficient to cover both principal and interest, the payment amounts would have to have been almost double the payment amounts provided.

79.     The Truth in Lending Disclosure Statement is deceptive in that it lists a schedule of payments that have no relation to, and are not based on, the interest rate listed on the Truth in Lending Disclosure Statement.

80.     At all times relevant, Defendant failed to clearly, conspicuously, and accurately disclose a payment amount that corresponds to the actual interest rate being charged on the loan sufficient to pay both principal and interest. The Note states, "I will pay Principal and interest by making payments

1   every month." The Note goes on to state, "In this Note, 'payments' refer to Principal and

2   interest payments only. . . ." Thus Plaintiff reasonably believed that if she made the payments

3   according to Defendant's payment schedule, the payments would, in fact, be applied toward both

4   principal and interest each month. However, the true fact is that the payment amounts stated in

5   Defendant's payment schedule did not include any principal on the loans at all during the first 5

6   years of the loan and only covered a portion of the interest Defendant was charging on the loan.

7   **B.    Defendant's Failure to Clearly and Conspicuously Disclose Negative
         Amortization Violates the Truth in Lending Laws**

8

9   81.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential

10  home loans:

11           **§ 226.19. Certain residential mortgage and variable-rate transactions.**

12           (b)    Certain variable-rate transactions. If the annual percentage rate may increase after
                    consummation in a transaction secured by the consumer's principal dwelling
13                  with a term greater than one year, the following disclosures must be provided at
                    the time an application form is provided or before the consumer pays a non-
14                  refundable fee, whichever is earlier... (vii) *Any rules relating to changes in the
                    index, interest rate, payment amount, and outstanding loan balance including, for*
15                  *example, an explanation of interest rate or payment limitations, negative*
                    *amortization, and interest rate carryover.*

16

17  (Emphasis added).

18  82.    The negative amortization disclosure is required and must be made clearly and conspicuously,

19  and done in a manner that does not obscure its significance.  The disclosure must state whether the

20  loan and payments established under the terms dictated by Defendant is a negative amortizing loan

21  and whether unpaid interest is being added to principal.

22  83.    In 1995, and continuing each time new Official Staff Commentary was issued, the Federal

23  Reserve Board made clear that variable rate loans with payment caps, such as those that are the

24

25  subject of this lawsuit, require a disclosure containing a definitive statement about negative

26  amortization:

27                              12 CFR Part 226

28                       [Regulation Z; Docket No. R-0863]

                                     -21-

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs** and that the **principal balance** *will* **increase**)..." (C.F.R. § 226.19) (Emphasis added).

84.    At all times relevant, statutory and common law in effect make it unlawful for lenders such as Defendant to fail to comply with the Federal Reserve Board's Official Staff Commentary, as well as Regulation Z and TILA.

85.    Defendant sold Plaintiff and the Class Members Option ARM loans that have a variable rate feature with payment caps. Defendant failed to include any reference in the Truth in Lending Disclosure Statement or in the Note that negative amortization would occur if Plaintiff and the Class Members followed the payment schedule provided by Defendant. The payment schedule makes no reference to negative amortization and makes it appear that the scheduled payments would, in fact, pay both principal and interest.

86.    In fact, the only place in the Note where Defendant even inferentially references negative amortization caused Plaintiff and all other similarly situated reasonable persons to believe that negative amortization is only a mere possibility, rather than a certainty. In fact, these loans were designed in such a way so as to make negative amortization a certainty. And even when a separate explanation was provided, Defendant omitted the important material fact that these loans and payment schedules would, in fact, guarantee negative amortization.

87.    Defendant's statement that the "monthly payment *could* be less or greater than the amount of the interest portion of the monthly payment" was a half-truth and did not alert or inform Plaintiff that the payment schedule provided by Defendant would guarantee that negative

-22-

1   amortization was going to occur on these loans. Rather, the Defendant made it appear that as long

2   as the payments were made according to the schedule listed in the Truth in Lending Disclosure

3   Statement, there would be no negative amortization.

4   88.    At all times relevant, Defendant's statement in the Note, Truth in Lending Disclosure

5   Statement, and any other disclosures it provided, described negative amortization as only a

6   mere possibility, and therefore was misleading and deceptive. In fact, Defendant's Option

7   ARM loan was designed in such a way as to guarantee negative amortization. The TILA

8   demands more than a statement that the payment could be less or may be less, when

9   Defendant knew that the payments were less than the amount necessary to pay both principal

10  and interest.

11

12  **C.    Defendant's Failure to Clearly and Conspicuously Disclose the Interest
        Rate Upon Which the Payment Schedule was Based Violates TILA**

13  89.    Pursuant to 12 C.F.R. § 226.17(a)(1), Defendant was required to "make the disclosures

14  required by this subpart clearly and conspicuously in writing, in a form that the consumer may

15  keep. The disclosures shall be grouped together, shall be segregated from everything else, and

16  shall not contain any information not directly related to the disclosures required under § 226.18.

17  The itemization of the amount financed under § 226.1 8(c)(1) must be separate from the other

18  disclosures under that section."

19  90.    Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that

20  disclosures be in a reasonably understandable form. For example, while the regulation requires no

21  mathematical progression or format, the disclosures must be presented in a way that does not

22  obscure the relationship of the terms to each other . . ."

23  91.    At all times relevant, Defendant's Option ARM loans violated 12 C.F.R. § 226.1 7(a)(1) in

24  that the relationship between the interest rate listed in the Note and the Truth in Lending Disclosure

25  Statement bear no relationship to the undisclosed interest rate upon which the payment schedule was

-23-

1    based. Therefore, as a direct and proximate result, the form of disclosure used by Defendant obscured

2    the relationship between the interest rate listed in the Note and Truth in Lending Disclosure

3    Statement and the payment schedule provided.

**D.    Defendant's Failure to Clearly and Conspicuously Disclose the Legal
        Obligation Violates Truth in Lending Laws.**

92.    12 C.F.R. § 226.17(c)(1) requires that the "disclosures shall reflect the terms of the legal

obligation between the parties."

93.    Official binding Staff Commentary in 12 C.F.R. § 226.17(c)(1) requires that the "disclosures

shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction.

In the case of disclosures required under § 226.20(c), the disclosures shall reflect the credit terms to

which the parties are legally bound when the disclosures are provided."

94.     The Official binding Staff Commentary further states at 12 C.F.R. § 226. 17(c)(1)(2), that

the "legal obligation normally is presumed to be contained in the note or contract that evidences

the agreement."

95.    Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate

or payment cap that would prevent the initial rate or payment, at the time of the first adjustment,

from changing to the rate determined by the index or formula at consummation, the effect of that

rate or payment cap should be reflected in the disclosures."

96.    At all times relevant, Defendant's Option ARM loans violated 12 C.F.R. § 226.17(c) in that

the Note and Truth in Lending Disclosure Statement do not disclose, and by omission, failed to

disclose what Plaintiff and the Class Members were legally obligated to pay. In particular, the Note

charged the borrowers a much higher monthly amount than what Defendant disclosed. Defendant

accomplished this deception by only listing a partial payment in the Truth in Lending Disclosure

Statement, rather than the full payment the borrowers were being charged for the loans, and were

1    legally obligated to pay.

2    97.    As a direct and proximate result of Defendant's omission and failure to clearly and

3    conspicuously disclose Plaintiff's legal obligations under the loans, Defendant took the partial

4    payments and added the deficit in ever-increasing amounts each month to principal, thereby

5    causing negative amortization to occur.

6    98.    Defendant also failed to provide complete information regarding the legal obligations of

7    the parties by failing to disclose the various monthly payment options the borrower would have

8    and how the different options would affect the amount the borrower would pay over the life of the

9    loan and the loss of equity in the borrower's home.

10

11   99.    The only payment option shown in the Truth in Lending Disclosure Statement is the

12   minimum payment option.  The minimum payment option results in the most risk to the

13   consumer, and the most pecuniary benefit to the Defendant.

14

15   100.    The purpose of the TILA is to provide information to consumers so that they are informed

16   about the terms of their loans and the kind of credit they are buying so that they are able to

17   compare it with the terms of other loans.  Defendant's failure to set forth all options of the Option

18   ARM loan does not even provide consumers with enough information to decide which payment

19   option is the most beneficial for the very loan they purchased, much less permit them to compare

20   the different options of the Option ARM loan with competing loans.

21

22   101.    Disclosure of the other options available to Plaintiff would have allowed her to (1)

23   compare the effect of the payment cap and the minimum payment versus payments of interest

24   only or principal and interest on negative amortization; (2) compare the total amount financed,

25   which would vary greatly depending on the payment option chosen; and, (3) compare the amount

26   of monthly payments under the various options.

27   102.    Disclosure of all the payment options is crucial so that consumers can ascertain which

28

-25-

1    payment option they should choose or if they can even afford the loan.

2    103.    Disclosure of all the payment options is also necessary so that consumers can understand

3    exactly how much they would be required to pay in order to fully pay the interest accrued and pay

4    down their principal balance in the other payment options, as well as compare the payment

5    options with competing loans so they can engage in the informed use of credit, which is the main

6

7    purpose of the TILA.

8    E.    **Defendant's Failure to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws**

9

10    104.    The Option ARM loans at issue each contained a variable rate feature with an initial

11    (undisclosed) teaser rate with payment caps. The payment cap is a limit on how much the payment

12    may be increased annually.  Its purpose is to provide borrowers with a limit on how much their

13    payment can increase from year to year.  The loans issued by Defendant contained a payment cap.

14    105.    The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10) iii states that "[if] a loan

15    contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first

16    adjustment, from changing to the rate determined by the index or formula at consummation, the

17    effect of that rate or payment cap should be reflected in the disclosures." Thus, at all times

18    relevant, Defendant had a duty to Plaintiff and the Class Members to disclose in the Truth in

19    Lending Disclosure Statement the effect the payment caps would have on the loans.

20

21    106.    At all times relevant, Defendant failed to disclose, and by omission, failed to inform

22    Plaintiff and the Class Members that the payment cap would cause thousands of dollars, each

23    month, to be added to the principal.

24    107.    As a direct and proximate result, Defendant failed to disclose, and by omission, failed to

25    inform Plaintiff and the Class Members of the effect of the payment cap in violation of 12 C.F.R. §

26    226.17.

27

28

1    **WHEREFORE,** Plaintiff and the Class Members are entitled to an order declaring that Defendants

2    violated TILA 15 U.S.C. § 1601, *et seq.,* that Plaintiff and the Class have the right to rescind

3    pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640,

4    attorneys' fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiff's

5    individual mortgage and those of any Class Member desirous of such relief, and for an order

6    awarding other relief as the Court deems just and proper.

7

8    **VII.        SECOND CAUSE OF ACTION**

9                     **Fraudulent Omissions**

10   108.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

11   109.    As alleged herein, pursuant to TILA, 15 U.S.C. § 1601, *et seq.*, Regulation Z (12 C.F.R. §

12   226), and the Federal Reserve Board's Official Staff Commentary, Defendant had a duty to disclose

13   to Plaintiff and Class Members (i) the actual interest rate on which the payment amounts listed in

14   the Truth in Lending Disclosure Statement are based (12 C.F.R. §226.17(c)); (ii) that making the

15   payments according to the payment schedule listed in the Truth in Lending Disclosure Statement

16   will result in negative amortization and that the principal balance will increase (12 C.F.R. §

17   226.19); (iii) that the payment amounts listed on the Truth in Lending Disclosure Statement are

18

19   insufficient to pay both the principal and interest; and (iv) complete information regarding the

20   various monthly payment choices the borrower would have and how different options would affect the

21   amount the borrower would pay over the life of the loan and the loss of equity in the borrower's home.

22   110.    The Note states, "I will pay Principal and interest by making payments" either monthly or

23   every two weeks, based on whether the loan was paid on a biweekly or monthly basis.  However, the

24   true facts are that the payments listed by Defendant on the Truth in Lending Disclosure Statement are

25
     insufficient to pay both principal and interest. In fact, the payment amounts listed on the Truth in
26

27   Lending Disclosure Statement are insufficient to pay enough interest to avoid negative

28   amortization which, under the terms of the Note was certain to occur if Plaintiff made the

-27-

payments according to the payment schedule listed in the Truth in Lending Disclosure Statement.

111.    The Note further states, "my monthly payment *could* be less or greater than the amount of the interest portion of the monthly payment." However, the true facts are that the payment amounts listed by Defendant in the Truth in Lending Disclosure Statement were, at all times relevant, insufficient to pay the total amount of interest due on the Note. Therefore, this statement was false in that it omitted important material information concerning the true facts, that negative amortization was certain to occur if consumers followed the payment schedule provided by Defendant in the Truth in Lending Disclosure Statement.

112.    The aforementioned omitted information was not known to Plaintiff which, at all times relevant, Defendant failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff and all others similarly situated.

113.    Defendant failed to disclose, and by omission, failed to inform Plaintiff that (i) the payment rate provided to Plaintiff and the Class Members on the Truth in Lending Disclosure Statement was insufficient to pay both principal and interest; (ii) that negative amortization was certain to occur if Plaintiff and the Class Members made payments according to the payment schedule provided to them by Defendant in the Truth in Lending Disclosure Statement; and (iii) that loss of equity and/or loss of Plaintiff's and the Class Members' residences was certain to occur if Plaintiff and the Class Members made payments according to the payment schedule provided by Defendant.

114.    As alleged herein, Defendant had a duty to disclose to Plaintiff, and at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendant had exclusive knowledge of material facts, including but not limited to the fact that (i) the payment amounts listed in the Truth in Lending Disclosure Statement were not based on the actual interest rate charged on the Note; (ii) that negative amortization was certain to occur; (iii) that the payment amounts listed in the Note and Truth in Lending Disclosure Statement are

-28-

insufficient to pay both principal and interest; and (iv) complete information regarding the various monthly payment choices the borrower would have and how different options would affect the amount the borrower would pay over the life of the loan and the loss of equity in the borrower's home.

115.    The concealed and omitted information was not known to Plaintiff and the Class Members and which, at all times relevant, Defendant failed to disclose and/or actively concealed by making such statements and partial misleading representations to Plaintiff and all others similarly situated

116.    From the inception of the Option ARM loan scheme until the present, Defendant has engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiff and the Class Members, regarding true facts concerning the interest rate upon which the payment schedule was based, the negative amortization that was certain to occur, complete information regarding the different payment options, and that the payment amounts listed in the Note and Truth in Lending Disclosure Statement are insufficient to pay both principal and interest, all of which Defendant was bound by duty to clearly and conspicuously disclose in the Truth in Lending Disclosure Statement.

117.    Defendant has known from the inception of their Option ARM loan scheme that (i) the interest rate upon which the payment amounts listed in the Notes and Truth in Lending Disclosure Statement are not based on the listed interest rate, but instead were based on a much lower rate; (ii) that making the payments according to the payment schedule listed in the Note and Truth in Lending Disclosure Statement will result in negative amortization and that the principal balance will increase; and (iii) that the payment amounts listed on the Truth in Lending Disclosure Statement are insufficient to pay both principal and interest.

118.    Defendant purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-payment loan, for up to the first five (5) years and that if they made their payments according to the payment schedule

1    provided by Defendant that it would be sufficient to pay both principal and interest.

2    119.    The omitted information, as alleged herein, was material to Plaintiff and Class Members in

3    that had the information been disclosed, Plaintiff and the Class Members would not have entered

4    into the loans.

5

6    120.    As a direct and proximate result of Defendant's failures to disclose and omission of material

7    facts, as alleged herein, Plaintiff and the Class Members have suffered damages, which include, but

8    are not limited to the loss of equity Plaintiff and the Class Members had in their homes prior to

9    entering these loans.

10   121.    The wrongful conduct of Defendant, as set forth herein, was willful, oppressive, immoral,

11   unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well

12   being of the Plaintiff, and others similarly situated.  Accordingly, Plaintiff, and all others similarly

13   situated seek punitive damages against Defendant in an amount to deter Defendant from similar

14

15   conduct in the future.

16   **WHEREFORE,** Plaintiff and Class Members are entitled to all legal and equitable remedies

17   provided by law, including but not limited to actual damages, exemplary damages, prejudgment

18   interest and costs.

19
     **VIII.        THIRD CAUSE OF ACTION**
20

21        **Violation of the UCL, California Bus. & Prof. Code §§ 17200, 17500, *et seq.*,
          "Unfair" and "Fraudulent" Business Acts or Practices**

22
     121.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.
23

24   122.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Class against

25   Defendant for its unfair, fraudulent and/or deceptive business acts and/or practices pursuant to

26   California Business and Professions Code §§ 17200, 17500, *et seq.*, also known as the California

27   Unfair Competition Law ("UCL"), which prohibits acts of "unfair competition," including any

28   unlawful, unfair, fraudulent, or deceptive business act or practice, as well as "unfair, deceptive,

                                            -30-

1    untrue or misleading advertising."

2    123.    The present claim is predicated on the generally applicable duty of any contracting party to

3    disclose important material facts, and on the duty to refrain from unfair and deceptive business

4    practices.  The Plaintiff and the Class Members hereby seek to enforce a general proscription of

5    unfair business practices and the requirement to refrain from deceptive conduct. The present claim is

6    predicated on duties that govern anyone engaged in any business and anyone contracting with

7    anyone else.

8
9    124.    At all times relevant, Defendant engaged in a pattern of deceptive conduct and

10   concealment aimed at maximizing the number of borrowers who would accept their Option ARM

11   loans. Defendant sold to Plaintiff and the Class Members a deceptively devised financial product.

12   Defendant sold their Option ARM loan product to consumers, including Plaintiff and the Class

13   Members, in a false or deceptive manner.  Defendant promised that the loan would have a very low,

14   fixed payment, with only a small annual increase in the payment amount, for a period of up to five (5)

15   years; and that the payment amount would be based on the listed interest rate.  Defendant withheld

16   from Plaintiff and the Class Members the fact that Defendant's Option ARM loan was designed to,

17   and did, cause negative amortization to occur.

18
19   125.    Defendant lured Plaintiff and the Class Members into the Option ARM loans with promises

20   of low payments.  Once Plaintiff and the Class Members entered into these loans, Defendant began

21   taking away equity from Plaintiff's home.  Moreover, Plaintiff could not escape because Defendant

22   purposefully placed into these loans an extremely onerous prepayment penalty that made it

23   prohibitively expensive for consumers to extricate themselves from these loans.  Thus, once on the

24   hook, consumers could not escape from Defendant's loan during this prepayment penalty period.

25
26   126.    Defendant sold its Option ARM loans as having a low payment.  However, Defendant

27   failed to disclose, and by omission, failed to inform Plaintiff that the low payments listed in the Note

28

-31-

and Truth in Lending Disclosure Statement were insufficient to pay both principal and interest and were, in fact, at all times relevant, completely insufficient to pay all of the interest accruing on the loans. Further, and in addition to Defendant's failure to disclose the actual cost of the loans, Defendant failed to disclose, and by omission, failed to inform Plaintiff that there was a discrepancy between the interest rate upon which the payments were based that the actual interest Defendant charged on the loans.

127.    At all times relevant, Plaintiff agreed to finance her primary residence through Defendant's Option ARM loan as a result of the misleading low interest and payment schedules provided to her by Defendant.  In particular, Plaintiff was lead to believe that if she made payments according to Defendant's payment schedule, the loan "could" result in negative amortization.  However, Defendant failed to disclose, and by omission, failed to inform Plaintiff that if she made her payments according to Defendant's payment schedule, that by the 6th year of the loan, the Plaintiff will have lost between 15-25% of the equity in her home, making it difficult, if not impossible to refinance to another home loan.

128.    Defendant aggressively sold its product based on the low payment.  Defendant knew that if it sold these loans in such a manner, its Option ARM loan product would be a hugely popular and profitable product for it. Defendant also knew, however, that it was selling this product in a false and deceptive manner.  While Defendant trumpeted its low payment loan to the public, Defendant knew that this was false, or at best, only partially true.

129.    In fact, Defendant's Option ARM loan possessed a low, fixed payment that was unrelated to the interest rate listed.  Unbeknownst to Plaintiff, the actual interest rate Defendant charged on her loan would require a much larger payment to pay both principal and interest.  After purchasing Defendant's Option ARM loan product, Plaintiff never actually received the benefit of the loan promised to her because immediately, Defendant began taking away Plaintiff's equity. Once

-32-

Plaintiff accepted Defendant's Option ARM loan, she had no viable option by which to extricate herself because the loan agreement included a draconian prepayment penalty.

130.    Defendant initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendant's profits.

131.    Defendant perpetuated this bait-and-switch scheme uniformly and in the same manner on Plaintiff and each member of the Class.

132.    As alleged herein, Defendant's failures to disclose important material information concerning the actual cost of the loans is, and was, unfair, fraudulent, and deceptive.

133.    The acts, misrepresentations, omissions, and practices of Defendant alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of the California Business and Professions Code, §§ 17200, 17500, *et seq.*

134.    By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of the California Business and Professions Code, §§ 17200, 17500, *et seq.*

135.    Defendant's conduct, as fully described herein, was likely to deceive, and did deceive, members of the consuming public, and at all times relevant, Defendant's omissions of material facts and failures to disclose have been and continue to be unfair, fraudulent, untrue, and/or deceptive.

136.    Defendant's misconduct as alleged herein gave Defendant an unfair competitive advantage over its competition.

137.    As a direct and proximate result of the aforementioned acts, Defendant received monies and continues to hold the monies expended by Plaintiff.

138.    The harm to Plaintiff outweighs the utility of Defendant's policies, acts and/or practices, and consequently Defendant's conduct herein constitutes an unlawful business act or practice within the meaning of the California Business and Professions Code, §§ 17200, 17500, *et seq.*

-33-

139.    The unfair, deceptive and/or fraudulent business practices of Defendant, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendant's Option ARM loans as described herein.

140.    As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiff and Class Members have lost thousands of dollars of equity in their homes. Plaintiff and Class members are direct victims of the Defendant's unlawful conduct, and each have suffered injury in fact, and have lost money and/or property as a result of Defendant's unfair and deceptive acts and practices.

**WHEREFORE,** Plaintiff and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendant because of its unfair, fraudulent, and deceptive acts and/or practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendant from its unfair, fraudulent and deceitful activity.

## IX.    FOURTH CAUSE OF ACTION

### Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

142.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

143.    Plaintiff entered into a written home loan agreement--the contract or Note--with Defendant. The Note was drafted by Defendant and could not be modified by Plaintiff. The Note describes the terms and respective obligations applicable to the parties herein.

144.    The Note states the interest rate and the payment amounts required for Plaintiff to pay off the loan.

145.    The Note further states that Plaintiff "will pay Principal and interest by making payments every month."

146.    The Truth in Lending Disclosure Statement, which accompanied the Note, sets forth a

-34-

1    payment schedule for Plaintiff to follow.

2    147.    The interest rate listed in the Note and in the Truth in Lending Disclosure Statement was

3    not used to calculate the payment amounts stated in the Note and listed in the Truth in Lending

4    Disclosure Statement. At all times relevant, Defendant knew that the payment schedule was not

5    based on the interest rate listed, but instead, was based on a much lower rate which caused the

6    loan contracts to be uncertain and ambiguous as to the amount borrowers would have to pay

7    each month in order to avoid negative amortization.  Defendant caused the uncertainty and

8    ambiguity as alleged herein, by purposefully stating in the Note and Truth in Lending

9    Disclosure Statement that Plaintiff "will pay Principal and interest by making payments

10   every month" and then providing Plaintiff with a payment schedule which is inconsistent with,

11   and not based on the interest rate listed in the Note.

12   148.    At all times relevant, Defendant drafted the Note and did not allow Plaintiff any

13   opportunity to make changes to the Note and due to Defendant's superior bargaining position,

14   the contract was offered on a take it or leave it basis.  As such, the loan contracts at issue are

15   contracts of adhesion.

16   149.    Defendant expressly and/or through its conduct and actions agreed that Plaintiff's monthly

17   payment obligations would be sufficient to pay both the principal and interest owed on the loan.

18   Defendant breached this agreement by failing to apply any of Plaintiff's payments to principal.

19   150.    Instead, and in order to make up the difference between the interest rate used to calculate the

20   payment schedule and the much higher rate listed in the Note, Defendant immediately began

21   reducing Plaintiff's equity in her home and applied no part of the payments to the principal balance

22   on her loan.  In fact, because Defendant charged more interest than was included in the payments

23   listed in the Truth in Lending Disclosure Statement, the payments were insufficient to cover the

24   interest charged on the loan and thus the principal balance increased (which is the negative

-35-

1    amortization Defendant purposefully built into these loan contracts).

2    151.    As a result, Defendant breached the written contractual agreement by failing to apply any

3    portion of Plaintiff's monthly payments towards her principal loan balance.

4    152.    Plaintiff, on the other hand, did all of those things the contract required of her. Plaintiff

5    made monthly payments in the amounts required under the terms of the Note and reflected in the

6    payment scheduled prepared and provided by Defendant.

7

8    153.    As a result of Defendant's breach of the agreement, Plaintiff has suffered harm.

9    Plaintiff has incurred additional charges to her principal loan balance. Plaintiff has incurred and

10   will continue to incur additional interest charges on the principal loan balance and surplus

11   interest added to Plaintiff's principal loan balance. Furthermore, Defendant's breaches have

12   caused Plaintiff's principal loan balance to increase thereby limiting her ability to make future

13   loan payments or obtain alternative home loan financing.

14

15   154.    At all times relevant, there existed a gross inequality of bargaining position between the

16   parties to the Option ARM loan contracts. At all times relevant, Defendant unreasonably and

17   unconscionably exploited its superior bargaining position and foisted upon Plaintiff extremely

18   harsh, one-sided provisions in the contract, which Plaintiff was not made aware of and did not

19   comprehend due to Defendant's fraudulent omissions and failures to clearly and conspicuously

20   disclose as alleged herein, and which attempted to severely limit Defendant's obligations under the

21   contracts at the expense of Plaintiff. As a result of these extremely harsh, one-sided provisions,

22   including but not limited to the provisions which seek to limit the low interest rate upon which the

23   payment amounts listed in the Truth in Lending Disclosure Statement for one month or less are

24   based, these provisions are unconscionable and therefore unenforceable.

25

26   155.    Defendant entered into written agreements with Plaintiff and Class Members based upon

27   the terms of the loans as stated in the Note and Truth in Lending Disclosure Statement.

28

-36-

156.    The Note and the Truth in Lending Disclosure Statement impliedly and expressly agreed to provide a loan secured by Plaintiff's home, and that the loan would have a low payment and interest rate for up to the first five (5) years of the loan.

157.    The Note and Truth in Lending Disclosure Statement expressly and impliedly agreed that if Plaintiff made the monthly payments in the amount prescribed by Defendant in the Truth in Lending Disclosure Statement, that negative amortization would not occur.  As alleged herein, the Note expressly states and/or implies that Plaintiff's monthly/biweekly payment obligations will be applied to pay both principal and interest owed on the loan.

158.    The written payment schedules prepared and created by Defendant, and applicable to Plaintiff's loan, did not disclose, and by omission, failed to inform Plaintiff that the payment amounts owed by Plaintiff to Defendant in years one through five are insufficient to cover the true costs of the loan.

159.    Instead, Defendant immediately began charging and collecting more than the required payments and applied no part of Plaintiff's payment to principal. In fact Plaintiff's payments were insufficient to cover the interest that Defendant charged, resulting in an increase in the amount of principal Plaintiff owed on her home.

160.    Defendant unfairly interfered with Plaintiff's rights to receive the benefits of the contract. This loan will cost Plaintiff thousands of dollars more than represented by Defendant.  Plaintiff did not receive the fixed low payment/interest rate home loan promised by Defendant. Instead, as alleged herein, Defendant foisted upon Plaintiff a loan which was guaranteed to result in negative amortization. As a result, Defendant has caused Plaintiff to lose equity in her home and therefore has denied Plaintiff the enjoyment and security of one of her most important investments.

161.    Plaintiff, on the other hand, did all of those things the contract required of her. Plaintiff made the monthly payments in the amounts required of her by the terms of the Note and reflected

-37-

in the payment schedule prepared and provided by Defendant.

162.    At all times relevant, Defendant unreasonably denied Plaintiff the benefit promised to her under the terms of the Note, including providing clear and conspicuous disclosure of a payment amount sufficient to pay both principal and interest so as to avoid negative amortization.

163.    Knowing the truth and motivated by profit and market share, Defendant has knowingly and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or fraudulent omissions to mislead and/or deceive Plaintiff and others similarly situated as alleged herein.

164.    Defendant's breaches, as alleged herein, were committed with willful and wanton disregard for whether or not Plaintiff would actually receive a home loan that would provide the promised low interest and payment rate for up to five years sufficient to pay both principal and interest.

165.    Upon information and belief and at all times relevant, Defendant possessed full knowledge and information concerning the above facts about these loans, and otherwise sold these loans throughout the United States, including the State of California.

166.    Defendant's placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and such acts and/or omissions were performed on the part of officers, directors, and/or managing agents of the Defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendant thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiff and the general public.

167.    At all times relevant, Defendant's conduct, as alleged herein, was malicious, oppressive, and/or fraudulent.

168.    As a result of Defendant's breach of the agreement and conduct, Plaintiff has suffered

-38-

harm. Plaintiff has incurred additional charges to her principal loan balance. Plaintiff has

incurred and will continue to incur additional interest charges on the principal loan balance

and surplus interest added to Plaintiff's principal loan balance. Furthermore, Defendant's

breach has placed Plaintiff in danger of losing her home through foreclosure and, as a direct

and proximate result of said misconduct, caused Plaintiff's principal loan balance to

increase and limiting her ability to make her future loan payments or obtain alternative home

loan financing.

**WHEREFORE,** Plaintiff is entitled to declaratory relief, compensatory damages proximately

caused by Defendant's breach of contract as alleged herein, all damages proximately caused by

Defendant's breach of the implied covenant of good faith and fair dealing, punitive damages,

prejudgment interest, costs of suit and other relief as the Court deems just and proper.

### PRAYER OF RELIEF

**WHEREFORE,** Plaintiff and all Class Members pray for judgment against the Defendant as

follows:

A.  An order certifying this case as a class action and appointing Plaintiff and her counsel

to represent the Class;

B.  For actual damages according to proof;

C.  For compensatory damages as permitted by law;

D.  For consequential damages as permitted by law;

E.  For statutory damages as permitted by law;

F.  For punitive damages as permitted by law;

G.  For rescission;

H.  For equitable relief, including restitution;

I.  For restitutionary disgorgement of all profits Defendant obtained as a

-39-

1    result of its unfair competition;

2    J.    For interest as permitted by law;

3    K.    For Declaratory Relief;

4    L.    For reasonable attorneys' fees and costs; and

5    M.    For such other relief as is just and proper.

6    Respectfully submitted,

7    DATED: April 24, 2008

8    _____
     Steven M. Tindall (CA Bar No. 187862)
9    RUKIN HYLAND DORIA & TINDALL LLP
     100 Pine Street, Suite 725
10   San Francisco, CA 94111
     415-421-1800
11   Fax: 415-421-1700
     steventindall@rhdtlaw.com

12   Daniel O. Myers (SC Bar No.9884)
     A. Hoyt Rowell, III (SC Bar No.3665)
13   Robert S. Wood (SC Bar No.7965)
     Catherine H. McElveen (SC Bar No.76725)
14   RICHARDSON, PATRICK, WESTBROOK &
     BRICKMAN, LLC
15   1037-A Chuck Dawley Blvd.
     Mt. Pleasant, South Carolina 29464
16   (843) 727-6500 (Telephone)
     (843) 216-6509 (Facsimile)
17   dmyers@rpwb.com
     hrowell@rpwb.com
18   bwood@rpwb.com
     kmcelveen@rpwb.com

19
     Evan D. Buxner (MO Bar No. 622 1006)
20   WALTHER-GLENN LAW ASSOCIATES
     10 South Brentwood Boulevard, Suite 102
21   St. Louis, Missouri 63105
     (314) 725-9595 (Telephone)
22   (314) 725-9597 (Facsimile)
     buxner@walther-glenn.com

23

24   ATTORNEYS FOR PLAINTIFFS

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury.

2

DATED: April 24, 2008

3

Steven M. Tindall (CA Bar No. 187862)
RUKIN HYLAND DORIA & TINDALL LLP

4

100 Pine Street, Suite 725
San Francisco, CA 94111

5

415-421-1800
Fax: 415-421-1700

6

steventindall@rhdtlaw.com

7

Daniel O. Myers (SC Bar No.9884)
A. Hoyt Rowell, III (SC Bar No.3665)

8

Robert S. Wood (SC Bar No.7965)
Catherine H. McElveen (SC Bar No.76725)

9

RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC

10

1037-A Chuck Dawley Blvd.
Mt. Pleasant, South Carolina 29464

11

(843) 727-6500 (Telephone)
(843) 216-6509 (Facsimile)

12

dmyers@rpwb.com
hrowell@rpwb.com

13

bwood@rpwb.com
kmcelveen@rpwb.com

14

Evan D. Buxner (MO Bar No. 622 1006)

15

WALTHER-GLENN LAW ASSOCIATES
10 South Brentwood Boulevard, Suite 102

16

St. Louis, Missouri 63105
(314) 725-9595 (Telephone)

17

(314) 725-9597 (Facsimile)
buxner@walther-glenn.com

18

19

ATTORNEYS FOR PLAINTIFFS

20

21

22

23

24

25

26

27

28

-41-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# Exhibit 1

**Washington Mutual Bank, FA**

**TRUTH IN LENDING DISCLOSURE STATEMENT**

| CUSTOMER NAME | LOAN NUMBER | DATE |
|---|---|---|
| VERONICA L JORDAN | 03-2241-069162256-7 | 04/26/2005 |

PRESENT ADDRESS
222 BURNING TREE DR, SAN JOSE, CA 95119

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled | |
| 4.408% | 335,381.73 | 387,986.07 | 723,367.80 | |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 12 | 1,298.32 | Monthly, beginning 06-01-2005 |
| 12 | 1,395.69 | Monthly, beginning 06-01-2006 |
| 12 | 1,500.37 | Monthly, beginning 06-01-2007 |
| 12 | 1,612.90 | Monthly, beginning 06-01-2008 |
| 12 | 1,733.87 | Monthly, beginning 06-01-2009 |
| 300 | 2,109.58 | Monthly, beginning 06-01-2010 |

VARIABLE RATE: YOUR LOAN CONTAINS A VARIABLE-RATE FEATURE. DISCLOSURES ABOUT THE VARIABLE-RATE FEATURE HAVE BEEN PROVIDED TO YOU EARLIER.

SECURITY: You are giving a security interest in:
☒ the goods or property being purchased.
☐

FILING FEES: 28.00    Fees paid to government officials with respect to security instrument.

LATE CHARGE: If a payment is late, you will be charged 5.000 % of the payment.

ASSUMPTION: Someone buying your house ☒ can, subject to conditions and under certain circumstances ☐ cannot assume the remainder of the mortgage on the original terms.

PREPAYMENT: If you pay off early, you ☒ may ☐ may not have to pay a penalty. If you pay off early, you ☐ may ☒ may not be entitled to a refund of part of the finance charges already paid.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

e means estimate

You may obtain property insurance from anyone you want that is acceptable to _____ Washington Mutual Bank, FA _____
_____ (the "Lender").

☐ Estimated Disclosure-All numerical disclosures, except late payment disclosure, are estimates.
☒ Final Disclosure
☐ Itemization of Amount Financed attached.

I acknowledge receipt of a copy of this Disclosure Statement and have not yet signed any documents evidencing or securing this proposed loan.

| VERONICA L JORDAN | DATE | MARY L JORDAN | DATE |
|---|---|---|---|
| | DATE | | DATE |

1476 (05-02)

# ADJUSTABLE RATE NOTE
## (12-MTA Index - Payment and Rate Caps)

03-2241-069162256-7

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125%__ OF THE ORIGINAL AMOUNT (OR $__486,990.00__). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

_____April 26, 2005_____          _____MODESTO_____    _____California_____
                                              (City)                    (State)

_____507 SQUASH CREEK LANE, PATTERSON, CA 95363_____
(Property Address)

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ ___389,592.00___ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ___Washington Mutual Bank, FA___. I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST
Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of _4.397_ %. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of _1.250_ %. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.
I will make my monthly payments on __1st__ day of each month beginning on _____June, 2005_____, I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on _____May 1, 2035_____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".
I will make my monthly payments at ___9451 CORBIN AVE, NORTHRIDGE, CA 91324___ _____, or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments
Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ _1,298.32_, unless adjusted at an earlier time under Section 4(H) of this Note.

03-2241-069162256-7

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the <u>1st</u> day of <u>June, 2005</u>, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding <u>Two & Five-Hundredths</u> percentage points <u>2.050</u> % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than <u>Nine & Ninety-Five-Hundredths</u> percentage points <u>9.950</u> % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing <u>June 1, 2006</u>, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

03-2241-069162256-7

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on   the maturity date in substantially equal payments.  For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate.  For each month that the  monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to ___125%___ of the principal amount original borrowed.  In the event my unpaid Principal would otherwise exceed that ___125%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation.  The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I)  Required Full Monthly Payment**

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K)  Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount

03-2241-069162256-7

necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ __15.00__ . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __Fifteen__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

32859 (11-01)                                    Page 4 of 6

03-2241-069162256-7

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver

03-2241-069162256-7

to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

x _____
   VERONICA L JORDAN

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

VERONICA LATREASE JORDAN

**DEFENDANTS**

WASHINGTON MUTUAL BANKK, FA

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Rukin Hyland Doria & Tindall LLP
100 Pine Street, Suite 725
San Francisco, CA 94111
(415) 421-1800

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☒ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities— Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities— Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus— Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C.A Section 1601 et seq.

Brief description of cause:
Failure to fully disclose terms of Option ARM, as required by the Truth in Lending Act.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND    ☒ SAN JOSE

DATE
April 24, 2008

SIGNATURE OF ATTORNEY OF RECORD